# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ALI BAKHTIARI,              )
)
         Plaintiff,     )
)     No. 22 C 2406
     v.             )
)     Judge Sara L. Ellis
DOE, et al.,         )
)
         Defendants.    )

## OPINION AND ORDER

Plaintiff Ali Bakhtiari brings this *pro se* lawsuit against Defendants Westmont Donut, Inc. ("Westmont Donut"), Wendy Doe and Cassey Roe (the "Store Managers"), Rishad Rajabali and the Rajabali Group, Inc. (collectively, with Westmont Donut and the Store Managers, the "Westmont Defendants"), Inspire Brands, Inc. ("Inspire Brands"), and Katie Johnson, Nils Okeson, and Bridget Peterson (collectively, the "Individual Inspire Defendants"). Against the Westmont Defendants and Inspire, Bakhtiari alleges refusal to serve and refusal to allow commercial participation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* (Count I), the Illinois Human Rights Act ("IHRA"), 775 Ill. Comp. Stat. 5/1-101 *et seq.* (Count II), 42 U.S.C. § 1981 (Count III), and 42 U.S.C. § 1982 (Count IV). Bakhtiari also brings state law claims against various of the Defendants, alleging assault; battery; intentional and negligent infliction of emotional distress; negligent hiring, retention, supervision, entrustment, failure to train, and failure to direct; failure to supervise, monitor, train, and direct a franchisee; and spoliation of evidence (Counts V–XVIII).

Inspire and the Individual Inspire Defendants (collectively, the "Inspire Defendants") move to dismiss under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6).

Because Bakhtiari has not established the Court's personal jurisdiction over the Inspire

Defendants, the Court grants their motion. The Westmont Defendants move to dismiss pursuant

to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Because Bakhtiari has not

sufficiently alleged racial discrimination under 42 U.S.C. § 1981 and § 1982 or that he met the

procedural requirements required to file suit under Title II of the Civil Rights Act, the Court

dismisses Bakhtiari's federal claims against the Westmont Defendants. The Court requests

further information from Bakhtiari regarding his domicile before it addresses Bakhtiari's state

law claims.

## BACKGROUND[1]

### I.    Parties

Westmont Donut and the Rajabali Group own and operate the Dunkin' Donuts

("Dunkin'") store at issue. Rajabali owns and operates the Rajabali Group and Westmont Donut.

Doe and Roe manage the Dunkin' store. Although Bakhtiari alleges that Inspire Brands is the

business manager, franchisor, and operator of the Dunkin' store, Inspire Brands is the indirect

parent company of the Dunkin' store's franchisor, Dunkin Donuts Franchising, LLC ("DDF").

The Individual Inspire Defendants all work in Inspire's legal department.

### II.   Factual Background

On December 4, 2021, Bakhtiari sought service at the Dunkin' store located in

---

[1] The Court takes the facts in the background section from Bakhtiari's complaint and presumes them to be true for the purpose of resolving Defendants' motions to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). On a Rule 12(b)(2) motion, the Court may also consider evidence submitted by a defendant opposing the Court's exercise of jurisdiction. *See Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). Therefore, the Court has reviewed the Inspire Defendants' affidavits and accompanying exhibits, "accepting as true any facts contained [therein] that remain unrefuted by the plaintiff." *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009).

Westmont, Illinois. Earlier that morning, Bakhtiari used the Dunkin' mobile application to place an online order for curbside pickup. When Bakhtiari arrived at the Dunkin' store, he called the store to inform the store employees that he was waiting for his order. When no employee appeared, Bakhtiari entered the store, where Doe informed him that the store no longer offered curbside pickup. Bakhtiari and Doe began to argue over the order and Bakhtiari asked Doe to check the store's order records so they could refund him. Doe told Bakhtiari that she could not refund his order, referring to him as "Ali Baba." Doc. 1 ¶¶ 17–18. Roe, the other Store Manager, then approached Bakhtiari from behind, shoved him, and ordered him to leave while making derogatory comments—calling Bakhtiari, among other things, a "rag head" and "camel jockey." *Id.* ¶ 20. Bakhtiari then left the store.

Later on December 4, Bakhtiari contacted the police and the DuPage County state's attorney office to report the incident. Bakhtiari also sent a memorandum to Okeson—Inspire Brands' General Counsel and Chief Administrative Officer—and Rajabali requesting that Okeson preserve footage of the Dunkin' store from the incident. Johnson, a Litigation Specialist at Inspire Brands, replied that she would forward his memorandum to those in possession and control of the requested footage. She forwarded his email to Rajabali. On December 6, Bakhtiari emailed Johnson, Okeson, and Peterson, Inspire Brands' Director of Litigation, requesting preservation of the personnel files of Doe and Roe. Again, Johnson forwarded Bakhtiari's email to Rajabali. On January 4, 2022, Bakhtiari sent another email to the Individual Inspire Defendants reiterating his request for evidence preservation. Peterson responded, informing Bakhtiari that the Individual Inspire Defendants forwarded his requests to the owner and operator of the Dunkin' store. She further wrote that Inspire Brands did not possess any of the information Bakhtiari sought and asked that he direct future correspondence to Westmont

Donut. Peterson provided contact information where Bakhtiari could reach her.

Bakhtiari followed up with the Individual Inspire Defendants on April 25, 2022, regarding the footage and personnel files. The next day, Inspire Brands' general counsel office informed Bakhtiari over the phone that the information he requested had been "accidentally erased!" Doc. 1 ¶ 11.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(2) challenges the Court's jurisdiction over a party. Fed. R. Civ. P. 12(b)(2). When a defendant raises a Rule 12(b)(2) challenge, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (citation omitted). If the Court rules on the Rule 12(b)(2) motion without an evidentiary hearing, the plaintiff need only establish a *prima facie* case of personal jurisdiction. *Id.* at 392–93; *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). In resolving a Rule 12(b)(2) motion, the Court "accept[s] as true all well-pleaded facts alleged in the complaint," *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012), and "reads the complaint liberally with every inference drawn in favor of [the] plaintiff," *GCIU-Emp. Ret. Fund*, 565 F.3d at 1020 n.1. However, if the defendant submits "evidence opposing the district court's exercise of personal jurisdiction, the plaintiff [ ] must similarly submit affirmative evidence supporting the court's exercise of jurisdiction." *Matlin*, 921 F.3d at 705. The Court "accept[s] as true any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff," *GCIU-Emp. Ret. Fund*, 565 F.3d at 1020 n.1, but resolves "any factual disputes in the [parties'] affidavits in favor of the plaintiff," *Felland*, 682 F.3d at 672.

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The standard of review for a Rule 12(b)(1) motion to

dismiss depends on whether the defendant raises a facial or factual challenge. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction—a facial challenge—the Court "must accept all well-pleaded factual allegations as true and draw all reasonable inferences" in the plaintiff's favor. *Id.* "[W]hen evaluating a facial challenge to subject matter jurisdiction," the Court employs the *Twombly–Iqbal* "plausibility" standard, "which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." *Id.* at 174. If, however, the defendant contests the truth of the jurisdictional allegations—a factual challenge—the Court may look beyond the pleadings and view any competent proof submitted by the parties to determine if the plaintiff has established subject matter jurisdiction by a preponderance of the evidence. *See id.* at 173; *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444–45 (7th Cir. 2009); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The Court construes Bakhtiari's complaint liberally because he is proceeding *pro se*. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards that formal pleadings drafted by lawyers.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976))).

## ANALYSIS

### I.    Inspire Defendants

The Inspire Defendants argue that the Court lacks personal jurisdiction over them because they do not have sufficient contacts with Illinois. In diversity cases, the Court may exercise personal jurisdiction over a defendant only if personal jurisdiction would be proper in an Illinois court. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). Illinois allows for personal jurisdiction to the full extent authorized by the Illinois and United States Constitutions. *KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 732 (7th Cir.2013). Although there may be theoretical differences between the federal and Illinois constitutional standards, the Seventh Circuit has observed that "no Illinois case has provided a definitive explanation" of these differences. *Matlin*, 921 F.3d at 705. Moreover, both constitutional standards essentially focus on whether exercising jurisdiction over a defendant is fair and reasonable. *See KM Enters.*, 725 F.3d at 732. Thus, a single inquiry into whether the United States Constitution permits jurisdiction suffices. *See, e.g.*, *Curry*, 949 F.3d at 393 (citation omitted); *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 756–57 (7th Cir. 2010); *C.H. Johnson Consulting, Inc. v. Roosevelt Rds. Naval Station Lands & Facilities Redevelopment Auth.*, No. 1:12-cv-08759, 2013 WL 5926062, at *2–3 (N.D. Ill. Nov. 5, 2013); *see also Wesly v. Nat'l Hemophilia Found.*, 2020 IL App (3d) 170569, ¶ 16 ("[I]t is generally true that, when federal due process concerns regarding personal

jurisdiction are satisfied, so are Illinois due process concerns." (alteration in original) (citation omitted)).  Jurisdiction is proper under the Due Process Clause of the United States Constitution if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Millikin v. Meyer*, 311 U.S. 457, 463 (1940)).  Minimum contacts exist where "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017).  Personal jurisdiction comes in two forms: general and specific.  *See Daimler AG v. Bauman*, 571 U.S. 117, 126–28 (2014); *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 878 (7th Cir. 2019).  The Inspire Defendants argue that they are not subject to either general or specific jurisdiction in Illinois.  The Court addresses each in turn.

### A.    General Jurisdiction

Bakhtiari contends that the Inspire Defendants have sufficient contacts with Illinois to support the Court's exercise of general personal jurisdiction.  A defendant is subject to general personal jurisdiction only where its contacts with the forum state are so "continuous and systematic" that it can be considered "at home" in the state.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  "This is a demanding standard that requires the defendant to have such extensive contacts with the state that it can be treated as present in the state for essentially all purposes."  *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 426 (7th Cir. 2010).  The Court evaluates Inspire Brands' and the Individual Inspire Defendants' contacts individually below.

### 1. Inspire Brands

For corporations, "the [Supreme] Court has identified only two places where [a corporation is essentially at home]: the state of the corporation's principal place of business and the state of its incorporation." *Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 698 (7th Cir. 2015) (citing *Daimler*, 571 U.S. at 137). Inspire Brands is a Delaware corporation with its principal place of business in Georgia. *GCIU-Emp. Ret. Fund*, 565 F.3d at 1020 n.1 (courts may "accept as true any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff"). This does not end the inquiry, however; the Supreme Court has left open the possibility that "in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (citation omitted). This is not such an exceptional case.

Bakhtiari argues that the Court should exercise general personal jurisdiction over Inspire Brands because of its franchising activities in Illinois, citing *J.B. v. Abbott Laboratories, Inc.*, No. 12-cv-385, 2013 WL 452807, at *2–3 (N.D. Ill. Feb. 6, 2013) (Southern District of Illinois had general personal jurisdiction over defendant that solicited business, sold and marketed products, and employed a sales team there). First, as the Inspire Defendants point out, *J.B.* predates *Daimler*, which "raised the bar" for general personal jurisdiction. *Kipp*, 783 F.3d at 698 (explaining that for a court to exercise general personal jurisdiction over a corporation, a plaintiff must show more than the "'substantial, continuous, and systematic course of business' that was once thought to suffice" (citing *Daimler*, 571 U.S. at 137–38)). In any event, Bakhtiari does not allege facts that would support a finding that Inspire Brands' operations in Illinois are so substantial as to render the corporation at home in Illinois. Bakhtiari has not provided the Court

with any of the necessary metrics to assess Inspire Brands' business contacts in Illinois, let alone more generally. *See BNSF*, 137 S. Ct. at 1554, 1559 (finding no general personal jurisdiction over company that had two thousand employees in the state in part because these employees represented less than five percent of the company's total work force); *Patera v. Bartlett*, No. 15 C 50190, 2016 WL 773225, at *3 (N.D. Ill. Feb. 29, 2016) ("Plaintiff has not made any allegations as to the . . . Defendants' activities in their entirety. She has only made allegations concerning the . . . Defendants' Illinois activities. These allegations are insufficient to make a *prima facie* showing of general jurisdiction." (internal quotation marks omitted)); *Hayward v. Taylor Truck Line, Inc.*, No. 15-cv-00866, 2015 WL 5444787, at *5 (N.D. Ill. Sept. 14, 2015) ("[Plaintiffs'] focus on [defendant's] contacts with Illinois . . . lack the relevant nationwide context necessary for the Court to conduct a proper analysis under *Daimler* and *Goodyear*."). Based on the contacts that Bakhtiari relies upon here, Inspire Brands would likely be at home in all states in which it conducts business. Because the Supreme Court has made clear that this is not appropriate, *Daimler*, 571 U.S. at 139 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them."), Bakhtiari has not met his burden of establishing a *prima facie* case of general personal jurisdiction and the Court declines to exercise general jurisdiction over Inspire Brands.

### 2.    Individual Inspire Defendants

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Daimler*, 571 U.S. at 137. The Inspire Defendants affirm that the Individual Inspire Defendants' domicile is Georgia. *See* Doc. 27-1-3; *GCIU-Emp. Ret. Fund*, 565 F.3d at 1020 n.1 (courts may "accept as true any facts contained in the defendant's affidavits

that remain unrefuted by the plaintiff").[2]  However, in "exceptional" cases, there may be situations where the person's contacts are so substantial that they are essentially at home in a different state.  *Id.* at 139 n.19.  As with Inspire Brands, this is not such an exceptional case.

All of the Individual Inspire Defendants reside in Georgia and none have ever resided in Illinois.  *See* Doc. 27-1-3.  Johnson has not visited Illinois in the past fifteen years.  Doc. 27-1 ¶ 4–7.  Okeson visited once in 2019 in connection with her work for Inspire Brands, but the Dunkin' brand had no connection with Inspire Brands at the time.  Doc. 27-2 ¶ 6.  Peterson has traveled to Illinois to visit family and friends; when she visits, she stays with family, friends, or in a hotel.  Doc. 27-3 ¶ 6.  She has never traveled to Illinois in connection with her work for Inspire Brands.  *Id.*  In support of general jurisdiction, Bakhtiari adds only that the Individual Inspire Defendants "have chosen to do business" in Illinois and provide legal assistance in Illinois.  Doc. 34 at 2.  These contacts do not render the Individual Inspire Defendants "at home" in Illinois such that the Court can exercise general personal jurisdiction.  *See Sullivan v. Bickler*, 360 F. Supp. 3d 778, 784 (N.D. Ill. 2019) (defendant's "mere communications and activities in Illinois," including performing music and transacting business there, were "insufficient to subject him to general personal jurisdiction in Illinois"); *Heritage Vintage Invs., LLC v. KMO Dev. Grp., Inc.*, No. 15 C 5582, 2015 WL 12838162, at *3 (N.D. Ill. Dec. 11, 2015) (declining to exercise general jurisdiction over defendant who "regularly conducted business in Illinois" and "traveled to Illinois regularly over the past 15 years" because those contacts were not "substantial enough"

---

[2] Contrary to Bakhtiari's assertions, the Individual Inspire Defendants' "self-serving" affidavits establishing "where they live" and "whether they have ever visited Illinois" are directly relevant to the Court's ability to exercise general personal jurisdiction.  *See* Doc. 34 at 2; *see also Wine & Canvas Dev., LLC v. Weisser*, 886 F. Supp. 2d 930, 938 (S.D. Ind. 2012) ("[E]vidence submitted by the defendant [in support of a motion to dismiss for lack of personal jurisdiction] may include affidavits unless the affidavits merely contain conclusory assertions that the court lacks personal jurisdiction over the defendant." (citing *Purdue Research Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 783 n.13 (7th Cir. 2003)).

to render defendant at home in Illinois).  Therefore, the Court declines to exercise general personal jurisdiction over the Individual Inspire Defendants.

### B.     Specific Jurisdiction

Bakhtiari also argues that the Court has specific personal jurisdiction over the Inspire Defendants.  Specific jurisdiction arises "when the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those activities."  *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010); *see also Abelesz v. OTP Bank*, 692 F.3d 638, 654 (7th Cir. 2012) ("Specific jurisdiction is jurisdiction over a specific claim based on the defendant's contacts with the forum that gave rise to or are closely connected to the claim itself.").  To establish specific jurisdiction, Bakhtiari must show that "(1) [the Inspire Defendants] purposefully directed [their] activities at the forum state or purposefully availed [themselves] of the privilege of conducting business in the state; (2) the alleged injury arises out of or relates to [Inspire Defendants'] forum-related activities; and (3) any exercise of personal jurisdiction . . . comport[s] with traditional notions of fair play and substantial justice."  *Rogers v. City of Hobart*, 996 F.3d 812, 819 (7th Cir. 2021).

### 1.     Inspire Brands

Bakhtiari asserts the following claims against Inspire Brands: refusal to serve in violation of the Civil Rights Act and the IHRA, refusal to allow commercial participation under 42 U.S.C. § 1981 and § 1982, negligent infliction of emotional distress, negligent failure to supervise and monitor a franchisee, negligent failure to train a franchisee, and negligent spoliation of evidence. In support of these claims, Bakhtiari alleges that Inspire Brands is the franchisor of the Dunkin' store, that it controlled the operations of the Dunkin' store, and that it was directly involved in the activities giving rise to this lawsuit.  Although a complaint "need not include facts alleging

personal jurisdiction," once a defendant raises the issue of personal jurisdiction through a Rule 12(b)(2) motion, as here, the plaintiff must put forth sufficient facts demonstrating personal jurisdiction. *Purdue Research Found.*, 338 F.3d at 782 (citation omitted) (internal quotation marks omitted). In connection with its motion to dismiss, Inspire Brands affirms that it is not the franchisor of the Dunkin' store, *see* Doc. 27-4 ¶¶ 7–9, that Westmont Donut operates the Dunkin' store and hires its employees, *id.* ¶¶ 7, 11, that Inspire Brands and Westmont Donut do not have a contractual relationship, *id.* ¶ 10, that Inspire Brands is not registered to do business in Illinois, *id.* ¶ 21, and that it has no bank accounts in Illinois, *id.* ¶ 22.

Bakhtiari fails to put forward sufficient facts to rebut Inspire Brands' evidence. First, in an attempt to satisfy the "purposefully availed" requirement of personal jurisdiction, *see Rogers*, 996 F.3d at 819, Bakhtiari argues that Inspire Brands maintains hundreds or thousands of franchisee locations in Illinois. But "the mere fact that a franchisor has franchisees in a particular state does not subject it to that state's jurisdiction." *Santora v. Starwood Hotel & Resorts Worldwide, Inc.*, 580 F. Supp. 2d 694, 700 (N.D. Ill. 2008) (dismissing case for lack of personal jurisdiction where plaintiff did not claim that parent company and franchisor exercised greater than average control over franchisees). Moreover, Inspire Brands' contacts with Illinois that do not relate to the Dunkin' store, to the extent they exist, do not "give rise to [Bakhtiari's] claims" and are therefore not relevant to the Court's assessment of specific personal jurisdiction. *Runze v. Marriott Int'l Inc.*, No. 1:19-CV-07151, 2020 WL 7027717, at *2 (N.D. Ill. Nov. 29, 2020) ("'[S]pecific' jurisdiction only allows courts to hear lawsuits in which the defendant's contacts with the forum state specifically give rise to the plaintiff's claims." (citing *Curry*, 949 F.3d at 395)); *see also Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) ("[N]ot just any contacts will do: 'For a State to exercise

jurisdiction consistent with due process, the defendant's *suit-related* conduct must create a substantial connection with the forum State.'" (citing *Walden v. Fiore*, 571 U.S. 277, 284 (2014))); *cf. Griffith Labs. Inc. v. Kancor Ingredients Ltd.*, No. 15 C 4391, 2017 WL 514188, at *4 (N.D. Ill. Feb. 8, 2017) (sales of a different product in Illinois did not allow court to exercise specific personal jurisdiction over defendant because specific jurisdiction requires litigation-specific conduct in the forum state).

Bakhtiari also argues that the Court may exercise specific personal jurisdiction over Inspire Brands based on an agency relationship that may exist between either Inspire Brands and Westmont Donut or Inspire Brands and the franchisor of Westmont Donut, DDF (Inspire Brands' subsidiary). Illinois allows one corporation's contacts to be imputed to a corporate affiliate for jurisdictional purposes if a parent company exerts substantial control over the subsidiary or there are grounds for piercing the corporate veil. *See Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940, 943 (7th Cir. 2000); *Abelesz*, 692 F.3d at 658–59 ("Imputation, however, requires an unusually high degree of control or that the subsidiary's corporate existence is simply a formality." (citation omitted) (internal quotation marks omitted)). Where a corporation observes corporate formalities, as here,[3] courts will only impute a subsidiary's contacts to its parent where "the subsidiary's only purpose is to conduct the business of the parent." *Cent. States, Se. & Sw. Areas Pension Fund*, 230 F.3d at 940; *Old Orchard Urban Ltd. P'ship v. Harry Rosen, Inc.*, 389 Ill. App. 3d 58, 66 (2009) ("The critical question is

---

[3] Inspire Brands has submitted evidence that it and DDF observe corporate formalities. For example, DDF has its own Board of Managers, Doc. 27-4 ¶ 14, maintains its own bank accounts, *id.* ¶ 15, and receives separate audited financial statements, *id.* ¶ 16. *See Marks v. Worldwide Robotic Automated Parking, LLC*, No. 16-CV-8656, 2017 WL 2985757, at *6 (N.D. Ill. July 13, 2017) (corporate formalities observed where companies operated as separate business entities, kept separate books, filed separate tax returns, produced separate financial statements, and maintained separate boards, even though there was evidence that companies shared the same officers).

whether the . . . subsidiary exists for no purpose other than conducting the business of its parent."). Mere control, direction, or supervision does not suffice. *See Alderson v. S. Co.*, 321 Ill. App. 3d 832, 854 (2001) ("Parents of wholly-owned subsidiaries necessarily control, direct, and supervise subsidiaries to some extent. If, however, the subsidiary is conducting its own business, then an Illinois court may not assert *in personam* jurisdiction over the parent simply because it is the parent.").

Bakhtiari's allegations that Inspire Brands "directs, monitors and closely controls" the day-to-day operation of the Dunkin' store and that it "was directly involved" in the actions giving rise to this lawsuit are insufficient to show that Inspire Brands exercises a higher than usual degree of control over either Westmont Donut or DDF, *see* Doc. 1 ¶ 13, particularly in light of the evidence that Inspire Brands offers, *see, e.g.*, Doc. 27-4 ¶¶ 7–9, 21–22, 10–11 ("There is no contractual relationship of any kind between Inspire Brands and Westmont Donut. Westmont Donut is responsible for hiring its own employees to operate the [Dunkin' store]."). *See Old Orchard*, 389 Ill. App. 3d at 67–68 (specific jurisdiction not found over parent even where record showed that parent and subsidiaries "filed consolidated tax returns and had the same officers and directors," that parent "procured the initial funding" for the subsidiaries, and parent "controlled the flow of cash between itself and its subsidiaries," as "[p]arent corporations necessarily direct and control some aspects of their subsidiaries' businesses"); *Cunningham v. Health Plan Intermediaries Holdings, LLC*, No. 17-CV-1216, 2018 WL 835222, at *4 (N.D. Ill. Feb. 13, 2018) ("Plaintiff correctly points out that agency relationships may be relevant to the question of specific jurisdiction . . . but Plaintiff's deficient and conclusory allegations . . . that all Defendants act as agents of all other Defendants cannot defeat the evidence that [Defendants] offer." (citation omitted)). Because Bakhtiari has not demonstrated that Inspire Brands directed

its actions at Illinois, that his alleged injuries arise out of those actions, or that Inspire Brands exercises a higher than usual degree of control over Westmont Donut or DDF, the Court declines to exercise specific personal jurisdiction over Inspire Brands. The Court therefore dismisses all claims against Inspire Brands without prejudice.

### 2. Individual Inspire Defendants

Bakhtiari asserts only one claim against the Individual Inspire Defendants: negligent spoliation of evidence. In support of the Court's exercise of jurisdiction, Bakhtiari argues that the Individual Inspire Defendants acted with deliberate indifference and that their actions "were directed to objectives within the state of Illinois." Doc. 34 at 3. The Individual Inspire Defendants contend that the Court cannot exercise specific personal jurisdiction over them because they have negligible, if any, contact with Illinois and the fact that they communicated by phone and email with Bakhtiari does not confer this Court with jurisdiction over them.

The Individual Inspire Defendants are correct. As to Defendant Okeson, Bakhtiari provides no support for the Court's exercise of personal jurisdiction. Bakhtiari alleges that he contacted Okeson regarding the alleged misconduct at the Dunkin' store, but the Individual Inspire Defendants' unrefuted evidence demonstrates that Okeson never replied. *See* Doc. 27-1-3. Because a defendant's contact with a state "must come from the activity of the defendant, not from the activity of the plaintiff or a third party," *Salkauskaite v. Sephora USA, Inc.*, No. 18-CV-08507, 2020 WL 2796122, at *4 (N.D. Ill. May 30, 2020) (citing *Purdue Research Found.*, 338 F.3d at 785), the Court lacks specific personal jurisdiction over Okeson.

As to Defendants Johnson and Peterson, their potentially relevant "contacts" with Illinois are their email and telephone communications with Bakhtiari. However, it is well settled that "[t]he plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S.

at 287. "For a State to exercise jurisdiction consistent with due process, that relationship must arise out of contacts that the defendant himself creates with the forum, . . . and must be analyzed with regard to the defendant's contacts with the forum itself, not with persons residing there." *Id.* at 277.

Here, Bakhtiari's allegations that Johnson and Peterson emailed him and spoke with him over the phone demonstrate only contact with Bakhtiari, and not with Illinois itself. *See Johnson v. Melton Truck Lines, Inc.*, No. 14 C 07858, 2016 WL 8711494, at *3 (N.D. Ill. Sept. 30, 2016) (declining to exercise personal jurisdiction over defendants whose only alleged contact with Illinois consisted of their emails and phone calls with plaintiff). The fact that their conduct may have affected Bakhtiari does not confer the Court with jurisdiction. *Advanced Tactical Ordnance Sys., LLC*, 751 F.3d at 802 ("The mere fact that defendant's conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." (citation omitted) (internal quotation marks omitted)). Therefore, the Court declines to exercise specific jurisdiction over the Individual Inspire Defendants and dismisses all claims against them without prejudice.[4]

## II.     Westmont Defendants

Bakhtiari alleges federal and state law claims against the Westmont Defendants. The Westmont Defendants move to dismiss the federal claims for lack of jurisdiction and failure to state a claim; they move to dismiss the state law claims for lack of jurisdiction. The Court addresses each federal claim in turn. As to the state law claims, as explained in more detail

---

[4] The Individual Inspire Defendants also argue that the fiduciary shield doctrine, which "denies personal jurisdiction over an individual whose presence and activity in the state in which the suit is brought were solely on behalf of his employer or other principal," *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1994), prevents the Court from exercising personal jurisdiction over them. Because the Individual Inspire Defendants do not have sufficient contact with Illinois, however, the Court need not determine whether the fiduciary shield doctrine applies.

below, the Court requests further information from Bakhtiari in order to decide whether the parties are diverse such that they satisfy the requirements of 28 U.S.C. § 1332.

### A.     Civil Rights Act of 1964

Bakhtiari argues that the Westmont Defendants violated Title VII of the Civil Rights Act by refusing to serve him on the basis of race and ethnicity.  As a threshold matter, the Court interprets Bakhtiari's claim to arise under Title II, which prohibits discrimination in places of public accommodation, 42 U.S.C. § 2000a(b)(2), rather than under Title VII, which prohibits discrimination in employment.  *See Erickson*, 551 U.S. at 94 (2007) ("A document filed *pro se* is to be liberally construed." (citation omitted) (internal quotation marks omitted)).

The Westmont Defendants argue that the Court should dismiss Bakhtiari's complaint because he failed to meet the procedural requirements required by Title II.  Title II provides that "in a State . . . which has a State or local law prohibiting such act or practice [prohibited by Title II] . . . no civil action may be brought under subsection (a) before the expiration of thirty days after written notice of such alleged act or practice has been given to the appropriate State or local authority by registered mail or in person."  42 U.S.C. § 2000a-3(c).

Illinois has laws that prohibit discrimination in places of public accommodation, *see, e.g.*, 775 Ill. Comp. Stat. 5/1-102(A); 775 Ill. Comp. Stat. 5/5-102(A), and has established a Department of Human Rights (the "IDHR") with the power to file complaints with the Illinois Human Rights Commission, *see Stearnes v. Baur's Opera House, Inc.*, 3 F.3d 1142, 1145 (7th Cir. 1993) (citing 775 Ill. Comp. Stat. 5/7-101(D) and 775 Ill. Comp. Stat. 5/8-101, 5/8-102).  Therefore, to satisfy the procedural requirements of Title II, Bakhtiari needed to notify the IDHR and wait thirty days before bringing this civil action.  *See Gillard v. Proven Method Seminars, LLC*, No. 09 C 5292, 2010 WL 11606674, at *2 (N.D. Ill. Apr. 5, 2010) ("A plaintiff must notify

the appropriate state or local agency at least thirty days prior to bringing the Title II action."),
*aff'd as modified sub nom. Gillard v. Proven Methods Seminars, LLC*, 388 F. App'x 549 (7th
Cir. 2010). The Seventh Circuit has held that the procedural requirements of Title II "are
jurisdictional and, unless those requirements are met, the federal courts do not have jurisdiction
to decide the dispute." *Stearnes*, 3 F.3d at 1144 (ordering case dismissed for lack of jurisdiction
where plaintiff did not notify the IDHR before filing his complaint in federal court); *see also Hill
v. Shell Oil Co.*, 78 F. Supp. 2d 764, 769 (N.D. Ill. 1999) ("Because the requirements of § 2000a-
3(c) are jurisdictional, failure on the part of plaintiffs to satisfy the 30-day state notice rule would
warrant dismissal of their Title II claim for lack of subject matter jurisdiction." (citation
omitted)).

Bakhtiari does not allege that he notified the IDHR before filing this suit. However, in
response to the Defendants' motions to dismiss, Bakhtiari claims he timely filed his claim with
the IDHR. Even crediting Bakhtiari's claim in light of his *pro se* status, Bakhtiari argues only
that he filed his claim within 300 days of the alleged civil rights violation, in compliance with
775 Ill. Comp. Stat. 5/7A-102. He does not assert that he filed his claim at least thirty days
before filing his complaint in federal court, as required by 42 U.S.C. § 2000a-3(c).[5]

Bakhtiari attempts to defend his failure to exhaust Title II's procedural requirements on
the ground that exhaustion would have been futile. His arguments fails. First, Bakhtiari does not
point to any cases that suggest a "futility exception" could apply to Title II's procedural

---

[5] Also in response to Defendants' motions to dismiss, Bakhtiari asks the Court to stay Count I—the Title
II claim—and Count II—the IHRA claim—pending the Illinois Department of Human Rights' decision
on Bakhtiari's case. The Court will not stay these claims; the Court lacks jurisdiction over Bakhtiari's
Title II claim and defers ruling on his IHRA claim pending receipt of further information regarding
domicile, discussed *infra*.

requirements in this case.[6]  Second, even if the Court could consider a futility exception,

Bakhtiari has failed to explain why complying with Title II's procedural requirements would

prove futile.  He argues that the relevant Illinois departments could "do nothing to reverse what

has occurred," Doc. 34 at 13, but the Court is similarly unable to "reverse" what has occurred.

The case Bakhtiari cites, which does not implicate Title II or the IHRA, found that "exhaustion

of administrative remedies was not mandated where the administrative process was biased."

*Gibson v. Berryhill*, 411 U.S. 564, 564 (1973).  Bakhtiari has not alleged that any of the relevant

Illinois authorities are biased against him.  Because Bakhtiari did not meet the procedural

requirements necessary to bring a claim under Title II of the Civil Rights Act and the Court finds

no reason to excuse those requirements, the Court dismisses this claim against the Westmont

Defendants without prejudice for lack of jurisdiction.[7]

---

[6] The Court has identified only one case in which a court excused plaintiffs from satisfying Title II's procedural requirements.  In *Robinson v. Power Pizza, Inc*., 993 F. Supp. 1458, 1461 (M.D. Fla. 1998), the court found that "requiring [plaintiffs] to comply with the notice requirement would be futile" where they sought preliminary injunctive relief and the relevant Florida department had no mechanism for providing such relief.  The court therefore held that "42 U.S.C. section 2000a–3(c) does not require Plaintiffs to provide notice to a State or local authority prior to filing a complaint in federal district court in a situation where Plaintiffs seek preliminary relief and the State or local authority provides no mechanism for obtaining such relief."  *Id*.  The court's holding does not apply here.  First, unlike in the Seventh Circuit, district courts in the Eleventh Circuit *do not* consider Title II's procedural requirements jurisdictional.  *See, e.g.*, *Zinman v. Nova Se. Univ., Inc.*, No. 21-CV-60723, 2021 WL 4025722, at *5 n.7 (S.D. Fla. Aug. 30, 2021) (acknowledging that the "Seventh Circuit . . . has found Title II's notice provision to be jurisdictional" but "[n]evertheless . . . find[ing] that Title II's notice provision . . . is not of jurisdictional cast" (citations omitted) (internal quotation marks omitted)), *report and recommendation adopted sub nom. Zinman v. Nova Se. Univ.*, No. 21-CIV-60723-RAR, 2021 WL 4226028 (S.D. Fla. Sept. 15, 2021).  Second, even courts within the Eleventh Circuit have questioned *Robinson*'s holding.  *See id.* at *6 n.10 ("*Robinson*'s holding seems to be at odds with the text of § 2000a-3(c).").  And, in any event, Bakhtiari does not seek preliminary injunctive relief and Illinois has a mechanism for providing Bakhtiari with the relief that he seeks.  *See Hill*, 78 F. Supp. 2d at 770 (explaining that "*Robinson* has little bearing on this case" where "Illinois has established a state agency, the [Illinois Department of Human Rights], to investigate and prosecute just the sort of acts of racial discrimination plaintiffs allege in this lawsuit" and plaintiffs did not seek preliminary injunctive relief).

[7] Although the Westmont Defendants did not challenge Bakhtiari's standing, the Court also questions whether Bakhtiari has standing to bring this claim.  *See Metallgesellschaft AG v. Sumitomo Corp. of Am.*, 325 F.3d 836, 842 (7th Cir. 2003) ("It is true, of course, that a district court may dismiss a case *sua sponte* for lack of Article III standing.").  Title II permits a plaintiff to seek injunctive relief, not damages.  *Smith*

### B.   42 U.S. § 1981 and 42 U.S. § 1982

Bakhtiari alleges that the Westmont Defendants violated his rights under 42 U.S. § 1981, which provides "[a]ll persons within the jurisdiction of the United States . . . the same right in every State and Territory to make and enforce contracts," and 42 U.S. § 1982, which deals with discrimination in property transactions.  Although claims under § 1981 usually involve the right to make and enforce contracts of employment, patrons have brought suits under § 1981 for refusal of service.  *See id.* (collecting cases).

The Westmont Defendants move to dismiss Bakhtiari's claims pursuant to Rule 12(b)(6). To assert a facially plausible claim under § 1981 or § 1982, a plaintiff must allege that (1) he is a member of a racial minority, (2) the defendant intended to discriminate on the basis of race, and (3) the discrimination involved one or more of activities identified in the statute.  *Morris v. Off. Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996) ("Because of their common origin and purpose, § 1981 and § 1982 are generally construed in tandem." (citing *Tillman v. Wheaton-Haven Recreation Ass'n, Inc.*, 410 U.S. 431, 440 (1973)).  Bakhtiari alleges that he is a member of a racial minority group, that the Westmont Defendants intended to discriminate against him on the basis of his race, and that the discrimination concerned the making and enforcing of contracts and the purchasing of property.  The Westmont Defendants do not challenge the first or third

---

*v. Hilton Chi. O'Hare*, No. 08 C 3449, 2009 WL 3617509, at *5 (N.D. Ill. Oct. 27, 2009) (Title II "provides a private right of action for injunctive relief; but, one cannot recover money damages for a violation of that section." (citing 42 U.S.C. § 2000a–3)).  Therefore, to pursue his Title II claim, Bakhtiari would need to demonstrate standing to seek injunctive relief, including a "significant likelihood and immediacy of sustaining some direct injury."  *Id.* (citing *Sierakowski v. Ryan*, 223 F.3d 440, 443 (7th Cir. 2000)).  Bakhtiari's complaint—reinforced by his response brief indicating that "the damage is done" and suggesting that the Illinois Human Rights Commission could do nothing to remedy his harms, Doc. 34 at 13—focuses on past wrongs.  *See Smith*, 2009 WL 3617509, at *5 ("While Smith has been turned away in the past, he needs to allege facts that suggest he is likely to be turned away in the future (such as his intent to return to the business center in the future) in order to have standing to seek injunctive relief.").  Thus, even if Bakhtiari had complied with the procedural requirements under Title II, it is unlikely that he would have standing to bring the claim.

element required to state a cause of action under § 1981 and § 1982, and so the Court will only address whether Bakhtiari sufficiently alleged intent to discriminate.

Bakhtiari has not sufficiently alleged that the Westmont Defendants denied him service on the basis of his race. To prevail on a § 1981 claim, Bakhtiari "must initially plead and ultimately prove that, but for race, [he] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020); *see also Piccioli v. Plumbers Welfare Fund Local 130, U.A.*, No. 19-CV-00586, 2020 WL 6063065, at *6 (N.D. Ill. Oct. 14, 2020) ("Put differently, a plaintiff cannot survive a motion to dismiss upon a showing that racial discrimination was one factor among many in a defendant's decision."). The same standard applies to a claim brought under § 1982. *See James v. City of Evanston*, No. 20-CV-00551, 2021 WL 4459508, at *9 (N.D. Ill. Sept. 29, 2021) (analyzing *Comcast* and holding that "a § 1982 plaintiff must also plead that his race was the but-for cause of the defendant's conduct"). However, as Bakhtiari alleges in his complaint, the Store Managers did not complete Bakhtiari's online order because of a change in the store's policy. *See* Doc. 1 ¶ 17 ("[Doe] maintained that her store no longer offered curbside pickup. She offered incomprehensible grievances about the phone app software."). Although Bakhtiari alleges that the Store Managers directed racial slurs toward him after refusing to process a refund and argues, in his response, that the Store Managers allowed a white patron "to sit, eat, drink, and even run a political campaign" in the store, Doc. 35 at 4, his allegations undermine a conclusion that but-for his race, the Store Managers would have honored Bakhtiari's online order. *See Piccioli*, 2020 WL 6063065, at *6 (dismissing § 1981 claim where plaintiff failed to show that racial discrimination was a but-for cause of defendant's action).

Because Bakhtiari has not alleged intent to discriminate as required by § 1981 and § 1982, the Court dismisses these claims against the Westmont Defendants without prejudice.

### C.     State Law Claims

The Westmont Defendants move to dismiss Bakhtiari's state law claims for lack of jurisdiction. They move to dismiss his IHRA claim on the ground that he failed to exhaust administrative remedies and his remaining state law claims on the ground that the IHRA preempts the claims.

The Court need not address these arguments now. With respect to all of his state law claims, the Westmont Defendants contend that Bakhtiari has not sufficiently alleged diversity jurisdiction under 28 U.S.C. § 1332 and that, because the Court has dismissed the federal claims that otherwise would provide the Court with subject matter jurisdiction, the Court should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c). In support of jurisdiction, Bakhtiari alleges that he is a "native and a citizen of Iran who lives in the United States in exile" and "a resident in the Eastern Division, Northern District of Illinois." Doc. 1 ¶¶ 2, 4. Bakhtiari did not allege the citizenship of any of the Westmont Defendants, but according to their briefs, they are domiciled in Illinois. Bakhtiari does not dispute this assertion.

If Bakhtiari is in fact domiciled in Illinois, the Court cannot exercise diversity jurisdiction over this matter because the Westmont Defendants and Bakhtiari would be domiciled in the same state. *See* 28 U.S.C. § 1332. However, Bakhtiari's response indicates that he is in fact a citizen of Iran, and therefore the Court may exercise jurisdiction under § 1332(a)(1). Alternatively, he asserts that his domicile is Missouri, attaching his Missouri driver's license. *See* Doc. 35-1. Considering all of the information the Court has in front of it, Bakhtiari's domicile is unclear.

Bakhtiari's ECF address reflects a location in Clarendon Hills, Illinois, and he alleges that he drove from "his house to his neighborhood Dunkin" to pick up his online order. Doc. 1 ¶ 1.

Because Bakhtiari's domicile is unclear, the Court cannot know if it *must* hear his state law claims, pursuant to diversity jurisdiction, or if it *may* hear his state law claims, pursuant to supplemental jurisdiction. The Court therefore seeks further information from Bakhtiari regarding his domicile. Bakhtiari should submit an affidavit attesting to his domicile, stating where he lives and where he intends to reside, by Tuesday, December 20, 2022. The Court defers ruling on Bakhtiari's state law claims until after this time.

## CONCLUSION

For the foregoing reasons, the Court grants the Inspire Defendants' motion to dismiss [27]. The Court grants in part and defers ruling in part on the Westmont Defendants' motion to dismiss [29]. The Court dismisses Bakhtiari's claims against the Inspire Defendants without prejudice for lack of personal jurisdiction. The Court dismisses Bakhtiari's federal claims against the Westmont Defendants without prejudice for lack of jurisdiction and for failure to state a claim. The Court defers ruling on Bakhtiari's state law claims until after receipt of his affidavit attesting to his domicile.

Dated: December 13, 2022

_____
SARA L. ELLIS
United States District Judge